United States District Court
Southern District of Texas

**ENTERED**

August 31, 2022

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Civil Action No.: 4:21-cv-3686 |
| CARLOS HURTADO, ERICA P. DAVIS and DATA RUSH LOGISTICS, INC. d/b/a DATA RUSH COURIERS, S.A. | § § § § | |
| *Defendants*. | § § | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

Pending before the Court is Plaintiff Allstate Fire and Casualty Insurance Company's (Allstate) Second Motion for Entry of Default and for Default Judgment Against Defendant Carlos Hurtado ("Hurtado").[1]  ECF No. 27.  Also before the Court are the parties' responses to the Court's order to show cause as to whether this suit should be dismissed pursuant to Rule 12(b)(1) or Rule 56 of the Federal Rules of Civil Procedure.  (ECF 20, ECF 21, ECF 22; ECF 23; ECF 24).  Having reviewed the parties' pleadings, exhibits, briefs, and the law, the Court RECOMMENDS that Plaintiff's request for a declaratory judgment be DENIED IN PART, that Plaintiff's remaining claims be DISMISSED WITHOUT PREJUDICE, and the Court also recommends that Plaintiff's Second Motion for Entry of Default and for Default Judgment Against Defendant Carlos Hurtado (ECF 27) be DENIED as moot.

---

[1] The District Court has referred this case to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. ECF No. 13.

I.      **Background**

Allstate issued Auto Policy number 838361557 covering the period July 28, 2018 to January 28, 2019 ("Policy"), to Carlos Hurtado.  ECF 1 at 3, ¶ 5.1.  On July 31, 2018, Erica P. Davis ("Davis") and Hurtado were involved in a car accident.  Davis alleges she was injured when Hurtado collided with her while he was driving a 2005 Chevrolet Express Van during the course and scope of his employment with Data Rush Logistics, Inc. d/b/a Data Rush Couriers, S.A. ("Data Rush").  Davis sued Hurtado and Data Rush for negligence and gross negligence in Jefferson County, Texas. ("Underlying Lawsuit").  Hurtado has sought coverage under the Policy for the claims brought against him by Davis in the Underlying Lawsuit.

On November 10, 2021 Allstate filed this suit against Hurtado, Davis, and Data Rush, seeking a declaration regarding Allstate's obligations under the Policy issued to Hurtado.  ECF 1. Specifically, pursuant to Title 28 U.S.C. § 2201, *et seq.*, Allstate seeks a declaratory judgment that it does not owe a duty to defend, indemnify, or provide coverage to Hurtado and Data Rush in the Underlying Lawsuit.  ECF 1 at 6-7.  Allstate contends it owes no duty to defend, indemnify, or provide coverage because the Policy excludes coverage for "liability arising out of the ownership or operation of a vehicle while it is . . . being used to carry property for a fee."  ECF 1 at 5.

On December 27, 2021, Davis filed an Answer in this action along with a Motion seeking various forms of relief, including to dismiss the entire suit as not ripe.  ECF 11 at 2.  Allstate filed a Response on January 10, 2022.  ECF 12.  The Court issued an Order on February 3, 2022 which: (1) denied Davis' Motion to Dismiss without prejudice to refiling; (2) ordered the parties to supplement the record with copies of the insurance policy and the underlying state petition, and (3) ordered the parties show cause as to why Allstate's claim for declaratory judgment on the duty to defend and/or

the duty to indemnify should or should not be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) or Federal Rule of Civil Procedure 56.  ECF 17.

Allstate, Davis, and Data Rush each filed timely Responses to the Order to Show Cause and provided the requisite copies of the underlying petition and insurance policy.  ECF 20, ECF 21, ECF 22.  Davis and Data Rush also submitted Responses to Allstate's Response to the Order to Show Cause.  ECF 23, ECF 24.  In its Response, Data Rush argues that whether the vehicle's "primary usage" is "to carry property for a fee" is not resolved by the Petition or any extrinsic evidence, and accordingly that Allstate should have a duty to defend Hurtado.  ECF 20 at 8-9.  In her initial Response to the Order to Show Cause, Davis renewed her prayer for dismissal under Rule 12(b)(6) or Rule 56.  ECF 22 at 5.  On June 2, 2022, Allstate filed a Second Motion for Entry of Default and for Default Judgment against Defendant Hurtado (ECF 27).

## II.     Allstate's duty to defend Hurtado

Allstate seeks the following relief as against Defendant Carlos Hurtado:

2. that the Court find that Allstate Fire and Casualty Insurance Company is not obligated under Auto Policy number 838361557 issued to Carlos Hurtado to defend or indemnify the claims being made against him by Erica P. Davis under Cause Number E-202748 in the 172nd District Court of Jefferson County, Texas;

3. that the Court find that Auto Policy number 838361557 issued by Allstate Fire and Casualty Insurance Company to Carlos Hurtado does not apply to afford coverage for the claims being made against him by Erica P. Davis under Cause Number E-202748 in the 172nd District Court of Jefferson County, Texas . . . .

ECF 1 at 6.  Under Texas law, the duty to defend and the duty to indemnify are separate duties which will be analyzed in turn.  *Farmers Tex. Cty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997).

## A.     Legal standard for determining whether Allstate has a duty to defend.

Under Texas law, the eight-corners rule governs a court's determination of an insurer's duty to defend. *GuideOne Specialty Mut. Ins. Co. v. Missionary Church of Disciples of Jesus Christ*, 687 F.3d 676, 682-83 (5th Cir. 2012). The eight-corners rule states that "the scope of an insurer's duty to defend is determined exclusively by the allegations in the pleadings and the language of the insurance policy." *Id*. The duty to defend exists if the facts alleged in the petition, taken as true, potentially assert a claim for coverage under the insurance policy. *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 253 (5th Cir. 2011); *GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 310 (Tex. 2006). However, if the pleadings in the underlying lawsuit only alleges facts that would preclude coverage under the policy, there is no duty to defend. *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004) (citing *Fidelity Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex. 1982)).

**B.    The eight corners analysis**

The petition in the Underlying Lawsuit alleges that, on or about July 31, 2018, Hurtado was driving "behind the Plaintiff, in his 2005 Chevrolet Express Van and was in the course and scope of his employment as a courier for" Data Rush when Hurtado "collided with the rear of Plaintiff's vehicle." ECF No. 20-2 at 3. Thus, the Court construes the allegations in the petition as establishing that at the time of the accident, the Van was being used to carry property for a fee. *See* ECF 20 at 4-5 (advocating that a "courier" is a person who transports property for a fee). The petition fails to allege any facts that establish "the primary usage" of the Van. ECF 20-2.

With respect to the four corners of the Policy, there is no dispute that Hurtado is the policyholder, that the 2005 Chevrolet Van is a covered vehicle under the Policy, and that the purported incident occurred within the applicable policy period. ECF 20-1 at 10. The Policy includes the following general grant of coverage:

> A.  We will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident.  Property damage includes loss of use of the damaged property.  Damages include prejudgment interest awarded against the covered person.  We will settle or defend, as we consider appropriate, any claim or suit asking for these damages.  In addition to our limit of liability, we will pay all defense costs we incur.  Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted.

ECF 20-1 at 26 (emphasis in original).  No party disputes that absent an exclusion, the accident falls within the coverage provision.  However, the policy contains the following exclusion:

> A.   We do not provide Liability Coverage for any person:
>
> > 5.      For that person's liability arising out of the ownership or operation of a vehicle while it is:
> >
> > \* \* \*
> >
> > b.      being used to carry property for a fee; this does not apply to you or any family member unless the primary usage of the vehicle is to carry property for a fee;
> >
> > \* \* \*

ECF 20-1 at 48 (emphasis omitted).   The Parties disagree as to whether the entirety of Exclusion A.5.b should be interpreted as a single exclusion or whether it contains both an exclusion and an exception.  This dispute affects the outcome of the eight corners analysis.  *See Guaranty Nat. Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998) (precluding an insurer's duty to defend where the insurer established a "pollution" exclusion and the insured failed to restore coverage under an exception for "sudden and accidental" events).

Allstate interprets this Policy language as consisting of an exclusion and an exception to that exclusion.  Allstate's argument regarding its interpretation of Exclusion A.5.b. and the result on the duty to defend is summarized in the following diagram:

5

| EXCLUSION<br><br>Coverage is excluded if the vehicle is being used to carry property for a fee | → | EXCEPTION TO EXCLUSION<br><br>Coverage is restored if the vehicles are operated by Hurtado or a family member and the "primary usage" of the vehicle is *not* to carry property for a fee | → | ALLEGATIONS IN PETITION<br><br>The petition does not allege facts that establish the requirement in the exception that the "primary usage" of the vehicle is *not* to carry property for a fee | → | RESULT<br><br>The eight corners establish the exclusion and do not restore coverage under the exception so ___**no**___ duty to defend exists |
|---|---|---|---|---|---|---|

Davis and Data Rush advance differing interpretations of Exclusion A.5.b. Davis argues Exclusion A.5.b. must be interpreted as a "sole policy exclusion," meaning the entirety of A.5.b must be read as a single exclusion. ECF 22 at 4. Davis' interpretation of A.5.b and the result of the eight corners analysis using that interpretation can be summarized by the following diagram:

| EXCLUSION<br><br>Coverage is excluded if the vehicle was being used to carry property for a fee,<br><br>*BUT*<br><br>The exclusion does not apply to Hurtado or his family members unless their primary usage of the vehicle is to carry property for a fee | → | ALLEGATIONS IN THE PETITION<br><br>The petition does not allege facts that establish that Hurtado's "primary usage" of the vehicle is to carry property for a fee | → | RESULT<br><br>The eight corners do not establish the exclusion so a duty to defend exists |
|---|---|---|---|---|

Data Rush interprets the language slightly differently but with the same result. Data Rush interprets A.5.b. to contain an exclusion for vehicles being used to carry property for a fee, an exception to the exclusion for Hurtado and his family members, and another exclusion if Hurtado or his family members' primary usage of the vehicle is to carry property for a fee. ECF 23 at 4-5. Data

Rush's argument regarding the proper interpretation of the policy and the impact on the duty to defend can be summarized as:



| EXCLUSION | | EXCEPTION | | EXCLUSION FROM THE EXCEPTION | | ALLEGATIONS IN PETITION | | RESULT |
|---|---|---|---|---|---|---|---|---|
| Coverage is excluded if the vehicle was being used to carry property for a fee | → | Coverage is restored if the vehicle is operated by Hurtado or his family members | → | Coverage is excluded if the "primary usage" of the vehicle is to carry property for a fee | → | The petition does not allege facts that establish Hurtado's "primary usage" of the vehicle is to carry property for a fee. | → | The eight corners do not establish the "exclusion from the exception" so a duty to defend exists |

As demonstrated by the diagrams above, whether Hurtado's "primary usage" of the Van is part of an exclusion (for which Allstate bears the burden of proof), or part of an exception (for which Defendants bear the burden of proof), impacts whether the eight corners establish a duty to defend. *See Guaranty Nat. Ins. Co.*, 143 F.3d at 193 (precluding an insurer's duty to defend under the eight corners where the insurer established a "pollution" exclusion and the insured failed to restore coverage under an exception for "sudden and accidental" events).

The Parties have offered reasonable, competing interpretations of Exclusion A.5.b. and whether coverage is excluded absent allegations in the petition regarding the primary usage of the vehicle. Therefore, the Court finds A.5.b. ambiguous in this context. Where an exclusion from coverage is ambiguous, Texas courts "must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 668 (Tex. 2008) ((quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 881 S.W.2d 552, 555 (Tex. 1991)); *see also State Farm Fire & Cas. Co. v. Reed*, 873 S.W.2d 698, 701 (5th Cir. 1993) (expressly adopting an

insured's construction of an exclusion after finding that the parties had offered competing reasonable interpretations of the exclusion).  Therefore, the Court interprets A.5.b in favor of Hurtado and finds that in order to exclude the Underlying Lawsuit from coverage, the petition must allege facts that establish that Hurtado's "primary usage" of the vehicle is to carry property for a fee.  The petition does not allege those facts.  Therefore, under the eight corners analysis, Allstate has not demonstrated the accident is excluded from coverage, so a duty to defend exists.

**C.     Allstate's extrinsic evidence**

While the eight-corners rule generally limits the court's analysis to the allegations within the "eight corners" of the petition and the policy, the Texas Supreme Court recently affirmed that, in limited circumstances, courts may consider extrinsic evidence when determining the existence of a duty to defend.  In *Monroe Guaranty Insurance Company v. BITCO General Insurance Corp.*, the Texas Supreme Court explained in response to a request for certification from the Fifth Circuit that the eight-corners rule "remains the initial inquiry to be used to determine whether a duty to defend exists."  640 S.W.3d 195, 201 (Tex. 2022) (citation omitted).  However:

> [I]f the underlying petition states a claim that could trigger the duty to defend, and the application of the eight-corners rule, due to a gap in the plaintiff's pleading, is not determinative of coverage, Texas law permits consideration of extrinsic evidence provided the evidence (1) goes solely to an issue of coverage and does not overlap with the merits of liability, (2) does not contradict facts alleged in the pleading, and (3) conclusively establishes the coverage fact to be proved.

*Id*. at 201-02.  Thus, all three requirements must be met in order for the Court to consider extrinsic evidence in tandem with the eight-corners analysis.

Allstate argues that even if the "eight corners" analysis fails to negate the duty to defend, the Texas Supreme Court's decision in *Monroe* allows the Court to consider extrinsic evidence.  ECF 21 at 7-11.  Allstate has offered extrinsic evidence consisting of Hurtado's deposition testimony in the

underlying state court suit.  ECF 21 at 14.  Specifically, Allstate points to Hurtado's testimony that "[he] was going to Orange and [he] was going to deliver some medications at Walgreen's" (ECF 21-3 at 11:6-7) and that he was "performing work for Data Rush" at the time of the incident.  ECF 21-3 at 18:20-24.  In addition, Allstate highlights the following exchanges:

> A.  (Hurtado) This is a cargo van, but it's not exactly mine.  Mine is a passenger van also. It had windows.
>
> Q. (counsel for Davis) How many --
>
> A. It has windows.
>
> Q. how many passengers did yours carry?
>
> A.  Originally it was for 12 passengers. But it doesn't have seating for passengers.
>
> Q. Okay.
>
> A. It's just for transportation.

ECF 21-3 at 9:12-20.

> Q. (counsel for Davis) I take it you go to a warehouse to pick up supplies?
>
> A. (Hurtado) Correct.
>
> Q. Okay. And how do you know your drop off for a particular day?  Do you understand?
>
> A. Yes. The route is this.  It's the same one every day.  It's the same one.
>
> Q. Every day you run the same route?
>
> A. Yes.
>
> Q. And, and do you run it in the same direction?
>
> A. Same direction.
>
> Q. So you, you do six Walgreen's a day?
>
> A. During that time period, yes.

ECF 21-3 at 12:24-13:11.

> Q.   (counsel for Davis) Do you deliver other items besides just for Walgreen's?
>
> A.   (Hurtado) Just that one route, it would have just medications for Walgreen's.
>
> Q.   Okay. And depending upon the orders would depend on what and how much you delivered?
>
> A.   Yes.

ECF 21-3 at 15:25-16:6.

> Q.   (counsel for Davis) Did someone approve the vehicle that you drove for Data Rush; in other words, could you drive just any vehicle you wanted to?
>
> A.   (Hurtado) No.  When you begin working with the company, they tell you which vehicle it is that you'll be using.

ECF 21-3 at 45:13-15.  Allstate also highlights Hurtado's testimony that he was generally paid "per route."  ECF 21-3 at 44:22-23.

The proffered testimony meets the first *Monroe* requirement because it is limited to the issue of coverage, not does not address Hurtado's alleged liability in the Underlying Lawsuit.  640 S.W.3d at 202.  The second *Monroe* requirement is met because the proffered extrinsic evidence does not contradict the facts alleged in the Underlying Lawsuit.  *See* ECF 22-1 at 3 (stating that Hurtado "was in the course and scope of his employment as a courier for [Data Rush]" at the time of the collision).

The third prong of *Monroe* requires the extrinsic evidence to "conclusively establish the coverage fact at issue."  640 S.W.3d at 203.  Thus, to negate the duty to defend, Allstate must show that Hurtado's "primary usage" of his 2005 Chevrolet Express Van is to carry property for a fee.  If the extrinsic evidence offered does not "conclusively establish" that Hurtado's "primary usage" of his Van is "to carry property for a fee," then the extrinsic evidence does not meet the third *Monroe* factor and the Court must determine Allstate's duty to defend based only on the "eight corners."

The proffered extrinsic evidence does not *conclusively* establish that the *primary* usage of the 2005 Chevrolet Express Van is to carry property for a fee.  The extrinsic evidence conclusively establishes that Hurtado used the van to carry property for a fee and did so on a daily basis for Data Rush on 250 out of 365 days of the year (ECF 21-3 at 43:8-15), and that the Van did not have seating for passengers and was used "just for transportation."   ECF 20-3 at 9:8-22.  The extrinsic evidence is consistent with Hurtado using the Van primarily to carry items for a fee.  But the evidence fails to *conclusively* establish that Hurtado had no other more important or main use for the Van. *See* "Primary," CAMBRIDGE DICTIONARY,  https://dictionary.cambridge.org/dictionary/english/primary (last visited August 30, 2022) (defining "primary" as "more important than anything else; main"). Therefore, the Court must analyze the duty to defend exclusively under the "eight corners" rule. *Monroe*, 640 S.W.3d at 203 ("Texas law permits consideration of extrinsic evidence provided the evidence . . . conclusively establishes the coverage fact to be proved.").  As set forth above, the eight corners analysis compels a finding that Allstate owes Hurtado a duty to defend in the Underlying Lawsuit.  Accordingly, the Court RECOMMENDS that Allstate's claim for a declaration that it owes no duty to defend Hurtado be DENIED.

**D.     Allstate's duty to indemnify Hurtado**

Generally, issues concerning indemnity are not justiciable while an underlying suit remains pending because the duty to indemnify "is triggered by the actual facts that establish liability in the underlying suit."  *Ooida Risk Retention Group, Inc. v. Williams*, 579 F.3d 469, 472 (5th Cir. 2009) (quoting *Columbia Cas. Co. v. Ga. & Fa. RailNet, Inc.*, 542 F.3d 106, 111 (5th Cir. 2008).  If an insurer is found to have a duty to defend, the issue of indemnity will be found non-justiciable. *State Farm Lloyds v. Richards*, 966 F.3d 389, 396-97 (5th Cir. 2020) (citation omitted) ("[g]enerally, Texas law only considers the duty-to-indemnify question justiciable after the underlying suit" absent

the negation of a duty to defend).  Here, the Underlying Lawsuit has not been decided and this Court has found Allstate has a duty to defend Hurtado in that suit.  Accordingly, Allstate's duty to indemnify Hurtado is not justiciable.  *Id.*  Thus, Court the RECOMMENDS Allstate's claim for declaratory relief on the duty to indemnify Hurtado be DISMISSED WITHOUT PREJUDICE.

### III.    Allstate's claims against Data Rush

When considering a request for declaratory judgment, a district court must determine whether the declaratory action is justiciable, which involves the question of whether an "actual controversy" exists.  *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000).  An actual controversy exists where "a substantial controversy of sufficient immediacy and reality exists between parties having adverse legal interests."  *Id.* at 896 (internal quotation omitted).  An actual controversy exists when an insurer brings a declaratory judgment action against its insured regarding the insurer's liability to the insured for an underlying state court action while the underlying action is pending.  *Ironshore Specialty Ins. Co. v. Tractor Supply Co.*, 624 F. App'x 159, 163 (5th Cir. 2015).

Although an actual controversy obviously exists between Allstate and Hurtado, the same cannot be said as between Allstate and Data Rush.  Yet, Allstate seeks the following declaratory relief as to Defendant Data Rush:

> 3. that the Court find that Allstate Fire and Casualty Insurance Company is not obligated under Auto Policy number 838361557 issued to Carlos Hurtado to defend or indemnify the claims being made against Data Rush Logistics, Inc. d/b/a Data Rush Couriers, S.A. by Erica P. Davis under Cause Number E-202748 in the 172nd District Court of Jefferson County, Texas;

> 4. that the Court find that Auto Policy number 838361557 issued by Allstate Fire and Casualty Insurance Company to Carlos Hurtado does not apply to afford coverage for the claims being made against Data Rush Logistics, Inc. d/b/a Data Rush Couriers, S.A. by Erica P. Davis under Cause Number E-202748 in the 172nd District Court of Jefferson County, Texas. . . .

ECF 1 at 6.  It is unclear from the petition in the Underlying Lawsuit and the briefing in this case that an "actual controversy" exists between Allstate and Data Rush.  Data Rush has not alleged that Allstate owes a duty to defend or indemnify Data Rush in the Underlying Lawsuit.  Allstate also does not argue that Data Rush has sought a defense or indemnity from Allstate.  No party contends that Data Rush is a party to the Policy issued to Hurtado.  Allstate's Original Complaint for Declaratory Judgment states that

> 6.3 Based on the above-referenced provisions and definitions of the Auto Policy, the policy does not apply to afford coverage for Davis's claims being made against Data Rush in the Underlying Lawsuit.
>
> 6.4 Based on the above-referenced provisions and definitions Auto Policy, Allstate is not obligated under the policy to defend or indemnify Data Rush for the claims being made against it in the Underlying Lawsuit.

ECF 1 at 6, ¶¶ 6.3-6.4.  In its Answer Data Rush "denied" these allegations (ECF 10 at 2, ¶¶ 15-16), but Data Rush's general denial is the only statement that could even remotely suggest that Data Rush seeks a defense or indemnity from Allstate pursuant to the Policy.  In its Response to the Order to Show Cause, Data Rush characterized this action as a "lawsuit over whether Allstate owes a duty to defend and indemnify its insured, Carlos Hurtado."  ECF 20 at 1; *see also* ECF 20 at 4 (identifying Hurtado as a "covered person" because "he is the named insured listed in the declarations").  Based on the record before the Court, no actual controversy exists about whether Allstate owes any duty to defend or indemnify Data Rush.  Allstate's request for a declaration that the Policy does not obligate Allstate to defend, indemnify, or provide coverage to Data Rush is not justiciable.  Therefore, the Court RECOMMENDS that these claims for declaratory judgment be DISMISSED WITHOUT PREJUDICE.

13

IV.    **Conclusion and Recommendation**

For the reasons stated above, the Court RECOMMENDS the following:

1.  That Plaintiff's request for a declaratory judgment that it does not owe a duty to defend Hurtado be DENIED;

2.  That Plaintiff's remaining claims for declaratory judgment be DISMISSED WITHOUT PREJUDICE as not justiciable; and

3.  That Plaintiff's Second Motion for Entry of Default and for Default Judgment (ECF 27) be DENIED as moot.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c).  Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on August 31, 2022, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge

14